UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

GERMAINE GILLETT,

      Petitioner,

v.                               Case No.  3:12cv445/LC/CJK

MICHAEL D. CREWS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

      Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer (doc. 19), submitting relevant portions of the state court record (doc. 20).  Petitioner replied.  (Doc. 27).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

On May 2, 2007, petitioner was charged by amended information filed in Okaloosa County Circuit Court Case No. 07-CF-910, with Aggravated Battery with Great Bodily Harm and with a Weapon (Count 1), Aggravated Battery with a Deadly Weapon (Count 2) and Carrying a Concealed Weapon (Count 3). (Doc. 20, Ex. A).[1] On October 1, 2007, petitioner signed a written plea and sentencing agreement whereby he agreed to plead no contest to the lesser included offense of Aggravated Battery on Count 1, the lesser included offense of misdemeanor Battery on Count 2 and as charged on Count 3, in return for a cap of 60 months imprisonment followed by 10 years of probation. (Ex. B). At a hearing conducted the same date, defense counsel Assistant Public Defender Bruce Miller informed the court that petitioner had accepted the State's plea offer which had been reduced to a written plea agreement. (Ex. C, p. 153). Petitioner then asked to speak, and stated to the judge that Mr. Miller had just been assigned to his case one day prior and that Mr. Miller had a conflict with former counsel, Marty Haug, also an Assistant Public Defender. (*Id*., p. 155).[2]

---

[1]All references to exhibits are to those provided at Doc. 20, unless otherwise noted. If a cited page has more than one page number, the citation is to the "Bates stamp" page number.

[2]Specifically, petitioner stated:

MR. GILLETT: You know, I wrote about my lawyer before, Mr. Bruce Miller, you know, I have no problem with Mr. Bruce Miller representing me but Mr. Bruce Miller is a conflict of interest because he's from the same law firm with Mr. Marty Haug. If Mr. Bruce Miller really wanted to help me with my case Mr. Bruce Miller would have stand up for me to let the state know that they didn't give him enough time to look over my case. One day is not enough time to look over my case, your Honor.

(Ex. C, p. 155).

The trial judge offered to appoint petitioner another attorney and set the case for trial in one month; however, petitioner responded:  "I take the plea, your Honor. I take the plea."  (*Id*., p. 3).  The trial judge cautioned:   "Now, wait a minute.  I don't want you to feel rushed.  I don't want you to feel like Mr. Miller is not doing a good job.  He's a good lawyer.  If you're not happy with everything I'm going to appoint you another lawyer and set your case for trial next month.  Is that what you want?" (*Id*., pp. 155-56).  Petitioner responded, "Your Honor, I'm ready to go to trial but these – I felt like I was pushing – I was threatened, your Honor, like the investigation wasn't investigated."  (*Id*., p. 156).  The judge responded, "Let's go to trial then. . . . [M]aybe a jury will find you not guilty but I can't – the State can charge you and you can enter a plea to their offer of five years or you can go to trial and see what the jury does, but I'm not sitting as a jury today."  (*Id*.).  Mr. Miller and petitioner conferred off the record.  (*Id*., p. 157).  Back on the record, Mr. Miller informed the judge that he had reviewed all of the discovery; that the prior week he met with petitioner and discussed the discovery; that petitioner informed him he wanted to accept the State's plea offer; and that it was still petitioner's desire to accept the plea offer and enter a plea.  (*Id*.).  Petitioner was placed under oath and attested that he had an opportunity to discuss the case with Mr. Miller; that he had an opportunity to go over the written plea form with counsel and that he understood the plea agreement; that nobody had forced him to accept the plea; that he understood he was waiving his right to a trial; and that he understood the most he could receive was 60 months in prison followed by 10 years of probation.  (*Id*., pp. 159-60).  The judge stated he would order a presentence investigation.  (*Id*., pp. 160-61).  Sentencing was set for November 14, 2007 (*id*.), and then continued to November 27, 2007.  (Ex. D, pp. 198-200).

On November 27, 2007, after the defense had presented witnesses in support of mitigation, petitioner stated to the court that he wanted to withdraw his plea:

> MR. GERMAINE GILLETT:  Yes, sir.  I would like to address the court, Your Honor.  Your Honor, today I would like to withdraw my plea under grounds for conflict of interest in my case.  I have fired Marty Haug for conflict of interest in my case.  He threatened me to make things worse in my case and who told me that innocent people do go to jail.  I was then given Mr. Bruce Miller on 9/27 to replace Mr. Marty Haug who would still be a conflict of interest in my case because he's from the same office, the same public defender.  I would also like to withdraw my plea to insufficient counsel because as of this day I still haven't got a motion of discovery or had any legal advice to me to tell me where I stand which also lead to misrepresentation.  I am filing under the ground of misrepresentation because I have [been] given Mr. Bruce Miller to represent me who only had one day for him to go over my case. We moved was not enough time.  I had to come to agreement with Mr. Bruce Miller to sign a plea by 9/28 which I was told – by 9/28 which I was told him I would – because I don't know where I stand and nobody seems to be interested in the truth but only in getting me to sign a plea. I signed a plea on 10 first and received a letter in the mail dated 10/10/07 which was after a day I signed a plea on 10 second telling me the witness will be helpful to me at sentencing.  [T]he letter said that the witness said that these guys did repeatedly use the N word and these [sic] guy was the aggressor.   If the witness is helpful for me at sentencing, he will be helpful at trial.  Your Honor I would like to withdraw my plea because I was told that the witness was of no help to me and I also have been informed of this information before I signed this plea.  I would have never signed this plea if I was informed.  If there wasn't a  conflict of interest in my case, if I was properly counsel[ed], and if I wasn't misrepresented, your Honor.  I'm not saying Mr. Bruce Miller is a problem but he was given my case in a short period of time to get ready for anything to represent me.  If Mr. Bruce Miller wanted to represent me he could have let the state know that he needed more time to get ready for my case.

(Ex. E, pp. 173-75).  The trial judge responded:

THE COURT:  Okay.  You've entered a plea with a written plea agreement and the questions I asked you at the time the plea was taken and then I hear Mr. Chandler come up here and basically say that you weren't the aggressor and that you were defending yourself and/or your brother against some big guy with a flashlight.  So if [you] withdraw your plea, I can agree for you to do that, but at that point in time the state has the right to go ahead and try you on a second degree felony, which carries a maximum term in prison of 15 years.

MR. GERMAINE GILLETT:  Yes, sir.

THE COURT:  A jury would make that decision, not me.  If I made the decision, I would probably, based on Mr. Chandler's testimony, find you not guilty because you were defending yourself and your brother if I only heard Mr. Chandler's testimony.  Now, I don't [know] what these white guys will say if they come in and testify.

MR. GERMAINE GILLETT:  Yes, sir.

THE COURT:  They may say you started it calling him a cracker but I don't know that.  I haven't heard that so I've either got to accept your plea and make a sentence that I have to decide or withdraw your plea.  Based on what I heard today I'll let you withdraw your plea and go to trial if that's the risk you want to take.

[PROSECUTOR] GRINSTED:  Judge, before you make that decision based on that information, Mr. Chandler's deposition was taken, Mr. Brian Casson's depositions [sic] was taken and Mr. Edward Cannon's deposition was taken.  The space [sic] on that – the state agreed to reduce one of the charges in the case and there's no legal reason whatsoever for this court to allow this man to withdraw his plea.

THE COURT:  Well, the only evidence I have here is –

[PROSECUTOR] GRINSTED:  What you have heard, Judge, you have heard him come into this court previously and enter a plea and admit to

the facts of the case that would support this plea.

THE COURT:  Well, I've heard –

[PROSECUTOR] GRINSTED:  And if the court would like I'll provide the court with the copies of the deposition if the court would like to review those depositions.

. . . .

THE COURT:  Okay.  Let's do this.  Let's come back on December 10th at 1:30 in the afternoon and I'll review these depositions and decide whether you – I'm going to sentence you under the plea or I'm going to set aside your plea, one of those two.

(*Id*., pp. 175-79).

At the hearing on December 10, 2007, defense counsel Miller advised the judge that he had spoken with petitioner and that petitioner advised counsel he wanted to proceed with the plea and sentencing.  (Ex. F, pp. 181-82).  Petitioner confirmed that he no longer wanted to withdraw his plea.  (*Id*., p. 182).  The trial judge announced that he had intended to permit petitioner to withdraw his plea and that he had already prepared an order to that effect.  The judge questioned petitioner:

THE COURT:  . . . My intention was to allow him to withdraw his plea and that prior to sentencing the presentence withdrawal of plea issue is supposed to be construed favorably on behalf of a defendant and it's supposed to be granted liberally.  [A]s a matter of fact, I've already prepared the order here and signed it allowing him to withdraw his plea and to proceed to trial.  I mean, [I] have to be absolutely certain this is what you want to do because I was going to let you go to trial and then it's strictly up to a jury.

MR. GERMAINE GILLETT:  Yes, your Honor.

THE COURT:  – if that's what you and the state want to have is a jury trial.

MR. GERMAINE GILLETT:  Your Honor, I'd rather run it before you today and let [sic] you handle the situation.

THE COURT:  You want to waive your withdrawal of the plea, waive a jury trial, and allow me to sentence you today?

MR. GERMAINE GILLETT:  Yes, sir.

THE COURT:  Does the state have any comment on that?

[PROSECUTOR] GRINSTED:  At the present – we've asked our questions, we're happy this is a freely and voluntarily plea [sic]. Will the court prefer some more time to determine what it thinks an appropriate sentence? . . .

(*Id*., p. 186).  Defense counsel Miller urged the court to be lenient in its sentence based on the fact that the victims had been the instigators and aggressors and willing participants in the incident.  (Ex. F, pp. 188-89).  Petitioner then spoke and stated he did not hit the victim in the face with a machete.  (*Id*., p. 190).  The following exchange followed:

THE COURT:  Okay.  We have disputed questions of fact.  I'm going to sign the order setting aside your plea.  We'll set it for trial and that's the best way to handle it.

[PROSECUTOR] GRINSTED:  I don't think we can do that.  [I] think he –

THE COURT:  He cannot make me accept his plea.

[PROSECUTOR] GRINSTED:  Yes, Judge.  He can plead and you've got to accept it if that's what he wants.  [H]e's got a constitutional right

to enter his plea.

MR. GERMAINE GILLETT:  Your Honor, if I withdraw this plea and I decide to take this trial I would like to know what I would be looking at, your Honor, 'cause I have a wife and I have kids, your Honor.  I'm not a violent person, your Honor. . . .

THE COURT:  You're charged with one second degree felony.

[PROSECUTOR] GRINSTED:  Two second degree.  It's 31 years incarceration is what he's looking at.

THE COURT:  No, it's one second degree felony, isn't it, and two misdemeanors?

[PROSECUTOR] GRINSTED:  No, two counts of – well, let me see –

[DEFENSE COUNSEL] MILLER:  We plea to reduced charges.

[PROSECUTOR] GRINSTED:  That's what he plead to.  What he's originally charged with is two counts of aggravated battery, one with great bodily harm, the other aggravated battery with a deadly weapon and carrying a concealed weapon.  [S]o he's looking at 31 years, Judge.  Let me suggest the man does not want to withdraw his plea.  He does not want to risk that.  He's told you that and that could happen.  [I]f the court would like to take some time, read the depositions, take, you know, you've heard what they've said, take some time to impose a sentence.

THE COURT:  That's why I set aside – am willing and did sign this order setting aside the plea.

[PROSECUTOR] GRINSTED: But, Judge, he has said he doesn't want that.  You're forcing him to make a choice here to where he could be looking at 31 years in the state penitentiary.

THE COURT:  Well, I can give him five years today under his plea agreement.

[DEFENSE COUNSEL] MILLER:  He clearly meets the statutory reason for the court to do a downward departure.  [I]t would be a clearly legal sentence, place him on supervision.

(Ex. F, pp. 190-93).  The parties discussed bringing in the two victims to testify regarding the extent of their injuries.  (*Id*., pp. 193-94).  The judge reset the case for hearing on December 27, 2007.  (*Id*., pp. 194-95).

At the December 27, 2007 hearing, the following transpired:

[PROSECUTOR] GRINSTED:  Judge, this is the case where at first Mr. Gillett wanted to withdraw his plea.  The court was going to grant it.  At the last hearing Mr. Gillett indicated he did not want to withdraw his plea but now I believe he's changed his mind again and I believe he does want to withdraw the plea but I believe the basis on he [sic] withdrawing the plea is that he – it's his lawyer that he's not happy with. I think it's the court's suggestion to withdraw the plea, the court should probably appoint a new attorney to represent him.

THE COURT:  Well, he doesn't get his attorney of choice.  I'm going to let you withdraw your plea and go to trial but I have to have a reason to hire another lawyer to replace the public defender.

MR. GILLETT:  I have no problem with my attorney, your Honor.

THE COURT:  All right.  Set if for next pretrial conference.

(Ex. G, p. 202).  The judge indicated he would sign the order setting aside petitioner's plea.  Defense counsel requested that petitioner's bond be lowered, which the court granted.  (*Id*., pp. 203-05).  The matter was set for pretrial, and eventually went to trial on February 4, 2008.  (Ex. H).  Petitioner was represented by defense counsel Miller.  The jury returned a verdict of guilty of Aggravated Battery with a Weapon

and with Severe Personal Injury on Count 1, guilty of Aggravated Battery with Slight Injury on Count 2, and guilty of Carrying a Concealed Weapon on Count 3.  (Ex. H, p. 614, Ex. I, pp. 64-65).  Petitioner was adjudicated guilty of those offenses and sentenced to concurrent terms of 88.9 months imprisonment followed by 5 years probation on Counts 1 and 2, and to a concurrent term of 11 months and 29 days in jail on Count 3.  (Ex. J, pp. 222-23; Ex. K)[3].  Judgment was rendered March 19, 2008, and an amended judgment correcting the description of petitioner's offenses was rendered March 27, 2008.  (Ex. K).  Petitioner's judgment of conviction was affirmed on direct appeal, per curiam and without a written opinion, on August 6, 2009.  *Gillett v. State*, 13 So. 3d 1059 (Fla. 1st DCA 2009) (Table) (copy at Ex. N).

On September 19, 2009, petitioner filed a motion to reduce or modify sentence under Florida Rule of Criminal Procedure 3.800(c).  (Ex. R).  The state circuit court denied relief on December 2, 2009.  (Ex. S).

On March 29, 2010, petitioner filed a motion for extension of time to file a motion for postconviction relief.  (Ex. T).  On November 1, 2010, petitioner, represented by Attorney Michael Ufferman, filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. U).  Two motions for leave to amend were granted, and a second amended motion for postconviction relief was filed on March 18, 2011.  (Ex. V).  The state circuit court summarily denied relief without an evidentiary hearing on all claims except petitioner's claim that the judgment contained a typographical error.  The court granted relief on that claim and directed the entry of a second amended judgment reflecting that petitioner went to trial and

---

[3]Having been released from prison on August 22, 2013, petitioner remains subject to the sanction of "community supervision."  Florida Dept. of Corrections, Corrections Offender Network. http://www.dc.state.fl.us/InmateReleases/detail.asp?Bookmark=4&From=list&SessionID=46110806

was found guilty by jury verdict (as opposed to having entered a plea of nolo contendere). (Ex. Y). A second amended judgment correcting the error was filed on October 18, 2011. (*See* online docket for Okaloosa County Circuit Court Case No. 07-CF-910). Petitioner, still represented by counsel, appealed the order denying postconviction relief. (Ex. BB). The Florida First District Court of Appeal ("First DCA") per curiam affirmed on July 11, 2012, without a written opinion. *Gillett v. State*, 96 So. 3d 886 (Fla. 1st DCA 2012) (Table) (copy at Ex. DD). The mandate issued September 18, 2012. (Ex. EE).

Petitioner filed his federal habeas petition in this court on September 12, 2012. (Doc. 1, p. 1). The petition raises nine grounds for relief. (*Id.*). Respondent filed an answer asserting that each of petitioner's grounds for relief fails for one or more of the following reasons: (1) the claim does not present an issue cognizable on federal habeas review; (2) the claim is procedurally defaulted; (3) the claim is without merit. (Doc. 19, pp. 24-54).

APPLICABLE LEGAL STANDARDS

Claims Cognizable on Federal Habeas Review

Federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); *Swarthout v. Cooke*, — U.S. —, 131 S. Ct. 859, 861, 178 L. Ed. 2d 732 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations and citations omitted); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80, 116 L. Ed. 2d 385 (1991) (holding that errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas

corpus relief; "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Barclay v. Florida*, 463 U.S. 939, 958-59, 103 S. Ct. 3418, 3429, 77 L. Ed. 2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted). "The writ of habeas corpus was not enacted to enforce State-created rights." *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000) (citation and quotation marks omitted); *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) ("Questions of state law [and procedure] rarely raise issues of federal constitutional significance, because '[a] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'") (*quoting Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983)). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).

Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[4] thereby giving the state the "'opportunity to pass upon and correct'

---

[4]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

          (A)  the applicant has exhausted the remedies available in the courts of the State; or

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78. A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts). A claim is also considered procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.");

---

      (B) (i)  there is an absence of available State corrective process; or

        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

accord *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303.  In the second instance, the federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower*, 7 F.3d at 210.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the

conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[5]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

---

[5]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably

extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts). In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the

petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

## DISCUSSION

Ground One          "Whether the trial court erred in not striking Petitioner's motion to withdraw his plea as a nullity when the Petitioner was represented by counsel and did not request counsel be discharged." (Doc. 1, p. 4).

Petitioner claims the trial court "abused its discretion" when it failed to strike as a nullity his *pro se* motion to withdraw plea made at the November 27, 2007 hearing, because petitioner was represented by counsel and did not request counsel be discharged, and petitioner's counsel neither filed a motion to withdraw plea nor adopted petitioner's *pro se* motion. (Doc. 1, p. 4). Petitioner asserts he exhausted this claim by raising it on direct appeal. (*Id*., p. 5).

Respondent argues that petitioner's claim must be rejected without reaching the merits because (1) it raises a purely state law issue and (2) even if found to present a federal claim, it is procedurally defaulted because petitioner failed to apprise the state appellate court of a federal constitutional basis for his claim. (Doc. 19, pp. 16-

18, 25-26).  Petitioner replies that "[w]hen the trial court abused its discretion it's a constitutional violation."  (Doc. 27, p. 2 (*citing United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009), *and United States v. Walker*, 915 F.2d 480 (9th Cir. 1990))).

Petitioner's claim is not one of constitutional dimension; instead, it involves the purely state law issue of whether the trial court violated Florida's rule of procedure (a judicially created practice in the state courts) that where a defendant is represented by counsel, any *pro se* motion filed by the defendant who does not also make an unequivocal request to discharge counsel must be stricken as a nullity.  *See Sheppard v. State*, 17 So. 3d 275, 280-82 (Fla. 2009) (describing the state rule/practice and discussing its history).  An alleged error of state law or rule of procedure provides no basis for federal habeas relief.  28 U.S.C. § 2254(a); *Swarthout, supra*; *Estelle, supra*.

Even if petitioner's passing reference to a "constitutional violation" – asserted for the first time in his reply – could be construed liberally with his petition as raising a <u>federal</u> <u>constitutional</u> challenge to the trial court's failure to strike his motion to withdraw plea, the claim is unexhausted because petitioner did not present, nor even identify, the federal constitutional nature of his claim to the state court.  When petitioner presented the issue on direct appeal, the basis of his argument was that the trial court erred in not striking his motion to withdraw plea.  Petitioner's substantive argument addressed Florida law.  (Ex. L, p. 28 (arguing that "[t]he Courts have consistently held that where a Defendant is represented by counsel any pro se motion filed by the Defendant who does not also make an unequivocal request to discharge counsel must be struck as a nullity.")).  Petitioner cited exclusively to state law cases.  (*Id*., pp. 27-29 (*citing King v. State*, 939 So. 2d 1196, 1196 (Fla. 2d DCA 2006),

which, in turn, cited three state cases)).  Petitioner did not cite any federal cases and did not say, or even suggest, that his claim was a federal claim involving a constitutional right.  Nothing in petitioner's direct appeal argument would have alerted the state court to the presence of a federal claim.  *See Baldwin v. Reese*, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004) ("[A] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'").

Petitioner is barred by state procedural rules from returning to state court to exhaust a federal constitutional challenge to the trial court's handling of his motion to withdraw plea.  *See* Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence.").   Accordingly, petitioner's claim is considered procedurally defaulted for federal habeas purposes. Petitioner has made none of the requisite showings to excuse his default.  Petitioner's procedural default bars federal habeas review of Ground One.

Because Ground One presents a purely state law issue and, to the extent it could be construed as asserting a claim of federal constitutional dimension, is procedurally defaulted, the claim does not warrant federal habeas corpus relief.

Ground Two          "Whether the trial court erred in fa[i]ling to provide the defendant with . . . conflict free counsel when the defendant and trial counsel became in conflict."  (Doc. 1, p. 5).

Petitioner claims the court should have appointed new conflict-free counsel upon his moving to withdraw his plea at the November 27, 2007 hearing, because he

told the court there was a "conflict of interest" with defense counsel.  Petitioner asserts that even the prosecutor recognized the "obvious conflict between the Defendant and his counsel" when, at a later hearing, the prosecutor raised the issue of the court appointing new conflict-free counsel.  Petitioner claims that failing to appoint him conflict-free counsel and requiring him to represent himself during the evidentiary hearing on his motion to withdraw plea, violated his rights under the Sixth Amendment to the United States Constitution.  Petitioner further contends that the trial court aggravated its initial error of failing to appoint conflict-free counsel by denying a subsequent defense motion for continuance of the trial to allow petitioner's recently retained private counsel (Rendi Katalinic) to familiarize himself with petitioner's case.  (Doc. 1, pp. 5-6).  Petitioner asserts he exhausted this claim by raising it on direct appeal.  (*Id*., p. 6).

Respondent asserts that although petitioner raised this claim on direct appeal, his claim was rejected on state procedural grounds, namely:  (1) petitioner's failure to properly preserve the issue for appellate review and (2) principles of waiver and estoppel.  (Doc. 19, pp. 27-30).  Respondent argues in the alternative that the claim is without merit, because petitioner has not demonstrated that Assistant Public Defender Miller actually labored under a conflict of interest.  (*Id*., p. 30).

A.    Whether The State Court's Decision On Direct Appeal Was An Adjudication On The Merits, Or Was Based On One Or More Independent And Adequate State Procedural Grounds

The First DCA summarily affirmed petitioner's judgment of conviction without explanation.  The Supreme Court has held that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any

indication or state-law procedural principles to the contrary.  The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  *Richter*, 131 S. Ct. at 784-85 (citations omitted).

Respondent has rebutted the *Richter* presumption by demonstrating that Florida law and the circumstances of this case make it more likely that the First DCA rejected petitioner's claim on procedural grounds (failure to preserve the issue for appellate review and estoppel) as opposed to the merits.  The record reveals that on October 1, 2007, when petitioner first alleged a  "conflict of interest," the trial court offered to appoint petitioner new counsel and to set the case for trial.  (Ex. C, p. 155).  Petitioner declined.  (*Id*.).  At the November 27, 2007 hearing when petitioner moved to withdraw his plea, neither petitioner nor defense counsel raised the issue of the trial court appointing new conflict-free counsel for purposes of litigating the motion or proceeding to trial.  (Ex. E).  At no time after the November 27, 2007 hearing did petitioner or defense counsel ever raise the issue of the court appointing new conflict-free counsel.  To the contrary, when the issue was raised by the  State on December 27, 2007, petitioner affirmed:  "I have no problem with my attorney."  (Ex. G, p. 202).  Even at the February 4, 2008 hearing on the morning of jury selection, when the trial court denied petitioner's motion for continuance of the trial (to enable newly retained private counsel more time to prepare) and private counsel withdrew from representation during the hearing, no one – neither petitioner, his public defender, nor private counsel – mentioned the appointment of new conflict-free counsel.  (Ex. H, pp. 4-7).  To the contrary, Assistant Public Defender Miller stated, "I assume we are still the attorney of record," to which the court responded, "Correct."  (*Id*., p. 7).  After petitioner went to trial and received an unfavorable jury verdict, petitioner

raised an issue at sentencing that his *pro se* motion to withdraw plea was a nullity. (Ex. J, pp. 208-211).  But even then, petitioner never raised the issue of the trial court's failure to appoint new conflict-free counsel upon his moving to withdraw his plea (or at any other stage of the case).  Petitioner's sole argument at sentencing, as summarized by defense counsel, was:  "that [petitioner's] pro se motion to withdraw his plea was a nullity and that being the case then everything that would have followed would have been a nullity and we were back in the status that we were prior to him withdrawing his plea."  (*Id*., p. 211).

Thus, although petitioner's initial brief on direct appeal asserted that he properly preserved the issue of the trial court's failure to appoint conflict-free counsel (Ex. L, pp. 29-30) (asserting that the issue was preserved  because:  "in a motion for continuance, the Defendant timely objected to the trial court proceeding to jury trial after the Defendant move[d] to withdraw his plea and the Defendant and trial counsel became in conflict."), neither petitioner nor defense counsel ever raised the issue of the trial court appointing new conflict-free counsel.  Although petitioner also asserted that the issue was preserved by the State's advising the court to appoint a conflict-free attorney (*id*., p. 30), that could not constitute proper preservation, because petitioner's immediate response to the State's suggestion was to unequivocally state, "I have no problem with my attorney."

The State's answer brief on direct appeal declined to address the merits of petitioner's Sixth Amendment claim and responded solely on the independent procedural bases that petitioner did not timely preserve the issue for appellate review and that petitioner's claim was barred by principles of waiver and estoppel (petitioner having received a favorable ruling on his motion to withdraw plea, declining the

appointment of new counsel during pre-trial proceedings, and complaining of the court's failure to appoint new conflict-free counsel only after going to trial as requested and receiving an unfavorable verdict).  (Ex. M, pp. 14-15 (*citing Lister v. State*, 925 So. 2d 400 (Fla. 5th DCA 2006), *and Arsenault v. Thomas*, 104 Fo. 2d 120, 122 (Fla. 3d DCA 1958) (noting "where a litigant requests and receives a favorable ruling, he cannot later . . . be heard to complain of the actions of the trial judge in acceding to his requests")).

Based on all of these circumstances, it is almost certain that the First DCA rejected petitioner's claim on the independent and adequate state procedural grounds that petitioner's claim was not preserved for appellate review and was barred by principles of waiver and/or estoppel.  Petitioner has made none of the requisite showings to excuse his procedural default.  Petitioner's procedural default bars federal habeas review of Ground Two.

B.      Petitioner's Claim is Without Merit

Even assuming to petitioner's benefit (solely for purposes of this analysis), that the First DCA rejected his claim on the merits and not independent and adequate state procedural grounds, petitioner is not entitled to federal habeas relief.  A criminal defendant is entitled to conflict-free representation. *Cuyler v. Sullivan*, 446 U.S. 335, 346, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980); *Bonin v. California*, 494 U.S. 1039, 1044, 110 S. Ct. 1506, 1509, 108 L. Ed. 2d 641 (1990) ("The right to counsel's undivided loyalty is a critical component of the right to assistance of counsel; when counsel is burdened by a conflict of interest, he deprives his client of his Sixth Amendment right as surely as if he failed to appear at trial.").  In *Cuyler*, the Court held that "the possibility of conflict is insufficient to impugn a criminal conviction."

*Id*. at 350.  To show a violation of the Sixth Amendment, "a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance."  *Id*. Furthermore,

> a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. . . . But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.

*Id*. at 349-50 (citations omitted).  "An 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests.'"  *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999) (en banc) (citation omitted).  The conflict cannot be merely possible, speculative, or hypothetical.  *Reynolds v. Chapman*, 253 F.3d 1337, 1342 (11th Cir. 2001).

Petitioner has made absolutely no showing that Assistant Public Defender Miller "actively represented conflicting interests."  *Cuyler*, 446 U.S. at 350.  This case did not involve an issue of concurrent multiple representation of co-defendants. Nor is there any indication that trial counsel actively or successively represented any witnesses or any former client with a competing interest during the time counsel represented petitioner.  At the November 27, 2007 hearing, petitioner offered only speculation of an actual conflict, alleging at most that counsel and former counsel Marty Haug were both assistant public defenders.  There is absolutely no evidence in the record suggesting counsel Miller pursued any interests in competition with petitioner's interests.  The state court's rejection of petitioner's claim did not result in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law."  Ground Two does not entitle petitioner to federal habeas corpus relief.

Ground Three          "Whether the trial court erred in failing to conduct a Richardson
                      hearing when the defense cause[d] a discovery violation because
                      the State failed to advise[ ] the defense of the change in a state's
                      witness testimony."  (Doc. 1, p. 6).

      Petitioner claims the trial court "committed reversible error" when it failed to

conduct a *Richardson* hearing.[6]  (Doc. 1, pp. 6-7).  To support this claim, petitioner

alleges that at the November 27, 2007 hearing, prior to petitioner moving to withdraw

his plea, the defense called Andrew Chandler to provide mitigating evidence for

sentencing.  Chandler had been present during the events giving rise to the charges

against petitioner.  Petitioner asserts that Mr. Chandler gave testimony favorable to

the defense, but later at trial, "changed" that testimony.  Petitioner alleges that the day

before trial, the prosecutor met with Chandler, reviewed the videotapes in the case,

and essentially told Chandler what he believed the videotape showed versus allowing

Chandler to tell what he observed and recalled.  At trial, upon hearing of Chandler's

"changed" testimony, the defense moved for a mistrial, arguing that the State violated

the rules of discovery by not disclosing the change in Chandler's testimony.

According to petitioner, the trial court refused to conduct a *Richardson* hearing, and

instead noted the objection for the record and instructed defense counsel to deal with

the changed testimony on cross-examination.  Petitioner claims he was prejudiced by

the alleged discovery violation in the preparation and presentation of his case,

because he could not fairly put forth his defense (self defense and defense of others)

after Chandler changed his testimony in front of the jury.  (Doc. 1, pp. 6-7).

Petitioner asserts he exhausted this claim by raising it on direct appeal.  (*Id.*, p. 7).

---

      [6]*Richardson v. State*, 246 So. 2d 771 (Fla. 1971).

Respondent argues that petitioner's claim must be rejected without reaching the merits because (1) it raises a purely state law issue and (2) even if found to present a federal claim, it is procedurally defaulted because petitioner failed to apprise the state appellate court of a federal constitutional basis for his claim.  (Doc. 19, pp. 16-18, 32-33).  Petitioner replies that "a due process violation occurred when he was denied a *Richardson hearing*, it's in plain language that a grievous error occurred and due process is clearly a establish federal law."  (Doc. 27, p. 3).

Petitioner's claim is not one of constitutional dimension; rather, it involves the purely state law issue of whether the trial court violated the state rule of procedure set forth in *Richardson v. State*, 246 So. 2d 771 (Fla. 1971), that if the State fails to comply with a discovery rule, the court must conduct an inquiry into the circumstances of the violation.  An alleged error of state law or rule of procedure provides no basis for federal habeas relief.  28 U.S.C. § 2254(a); *Swarthout, supra*; *Estelle, supra*; *see also e.g., Cisneros v. McNeil*, No. 8:05cv762-T-27TGW, 2008 WL 1836368, at *5 (M.D. Fla. Apr. 23, 2008) ("Whether the trial court failed to conduct a *Richardson* hearing is a matter of state law and is not cognizable on federal habeas corpus review.")

Even if petitioner's passing reference to "due process" – asserted for the first time in his reply – could be construed liberally with his petition as raising a <u>federal due process</u> challenge to the trial court's failure to conduct a hearing on the alleged discovery violation, the claim is unexhausted because petitioner did not present the federal constitutional nature of his claim to the state court on direct appeal.  When petitioner presented the issue on direct appeal, the basis of his argument was that the trial court "committed reversible error" when it failed to conduct a *Richardson*

hearing. (Ex. L, p. 40). Petitioner cited exclusively to state law cases and all of his substantive arguments addressed Florida law. (*Id*., pp. 39-40 (*citing Richardson v. State*, 246 So. 2d 771 (Fla. 1971), *and Charles v. State*, 903 So. 2d 314, 316 (Fla. 2d DCA 2005))). Petitioner did not cite any federal cases and did not say, or even suggest, that his claim was a federal claim involving due process. Nothing in petitioner's direct appeal argument would have alerted the state court to the presence of a federal claim. Petitioner is barred by state procedural rules from returning to state court to exhaust a federal constitutional challenge to the trial court's failure to conduct a hearing on the alleged discovery violation. *See* Fla. R. Crim. P. 3.850(c). Accordingly, petitioner's claim is considered procedurally defaulted for federal habeas purposes. Petitioner has made none of the requisite showings to excuse his default. Petitioner's procedural default bars federal habeas review of Ground Three.

Because Ground Three of petitioner's federal habeas petition presents a purely state law issue and, to the extent it could be construed as asserting a claim of federal constitutional dimension, is procedurally defaulted, Ground Three does not warrant federal habeas corpus relief.

Ground Four        "Defense counsel rendered ineffective assistance of counsel by promising the jury certain testimony in opening statements and then failing to follow through on this promise." (Doc. 1, p. 7).

Petitioner alleges that during opening statement defense counsel told the jury that Andrew Chandler would testify that petitioner did not take any aggressive action until after Cory Canon (one of the victims) attempted to hit petitioner's brother with a metal flashlight. During trial, however, Chandler testified that he did not see Canon attempt to hit petitioner's brother with a flashlight. Petitioner asserts trial counsel was ineffective for telling the jury during opening statement that he would present

exculpatory evidence of self defense and then failing to present that evidence at trial. (Doc. 1, p. 7).  Petitioner asserts he exhausted this claim by raising it in his Rule 3.850 proceeding.  (*Id*., p. 8).

Respondent asserts that petitioner is not entitled to federal habeas relief, because the state court's rejection of this claim is consistent with *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  (Doc. 19, pp. 34-40).

A.    Clearly Established Federal Law

In *Strickland v. Washington, supra*, the Supreme Court set out a two-part inquiry for ineffective assistance claims.   A petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner. *Id.*, 466 U.S. at 687.  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (quoting *Strickland*, 466 U.S. at 668, 694).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of *Strickland* was

unreasonable under § 2254(d) is all the more difficult."  *Richter*, 131 S. Ct. at 788.

As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly
> deferential," and when the two apply in tandem, review is "doubly" so.
> The *Strickland* standard is a general one, so the range of reasonable
> applications is substantial. Federal habeas courts must guard against the
> danger of equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d).   When § 2254(d) applies, the
> question is not whether counsel's actions were reasonable. The question
> is whether there is any reasonable argument that counsel satisfied
> *Strickland*'s deferential standard.

*Id.* (citations omitted).

    B.    Federal Review of State Court Decision

Petitioner raised this claim as Ground One of his second amended Rule 3.850

motion.  (Ex. V, pp. 53-54).  The postconviction court identified *Strickland* as the

controlling legal standard (Ex. Y, pp. 361-62), and denied relief on the merits as

follows:

> First, Defendant claims that his attorney promised the jury during
> his opening statement that the evidence would support Defendant's
> claim of self-defense or defense of others.  Defendant argues that his
> trial counsel told the jury that a witness to the events would testify that
> the Defendant did not strike the victim across the face with a machete
> until the victim swung or threatened to swing a large flashlight at the
> Defendant's friend.
>
> The State responds that Defendant's attorney did in fact ensure
> that this testimony was presented to the jury and that this ground must
> fail because it is refuted by the record.  The State is correct.
>
> Although on direct examination by the State, witness Andrew
> Chandler did not provide the testimony supporting defense of others that
> Defense counsel previously informed the jury he would, on cross

examination Defendant's attorney effectively brought out from the witness that he did in fact see the victim attack or begin to attack Defendant's friend with a large flashlight before Defendant responded with his own machete attack in response.  This ground is refuted by the record and summarily **DENIED**.

(Ex. Y, pp. 362-63) (footnote omitted).  In a footnote, the court cited to, and attached to its order, pages 218-243 of the trial transcript (the cross-examination of Andrew Chandler).  (Ex. Y, Attach. Ex A).  The state circuit court's order was summarily affirmed on appeal.

The state court's factual findings are presumed correct.  This court has carefully reviewed the trial transcript and concludes that it amply supports the state court's factual determination that defense counsel elicited testimony from Andrew Chandler that it appeared to him Mr. Cason (one of the victims) instigated the incident and that it was only after Mr. Canon (the other victim) began raising a metal flashlight to hit petitioner's brother that petitioner struck the victims with the machete.  (Ex. Y, Attach. Ex. A).  This factual determination refutes petitioner's allegation that counsel failed to fulfill his promise to the jury that they would hear evidence that petitioner acted in self-defense or defense of others.  The state court's rejection of petitioner's ineffective assistance claim did not result in a decision that was "contrary to, or involved an unreasonable application of" *Strickland*.  Ground Four does not entitle petitioner to federal habeas corpus relief.

Ground Five        "Defense counsel was ineffective for failing to present a defense witness at trial (Dr. Louis Vagias)."  (Doc. 1, p. 8).

Petitioner alleges that Dr. Vagias treated Cory Canon (one of the victims) on April 9, 2007, and that Dr. Vagias would have testified that Canon did not suffer great bodily harm but rather had little pain and moderate injuries.  Petitioner alleges that

trial counsel knew Dr. Vagias was the doctor who treated Mr. Canon and that Vagias was available to testify at trial.  Petitioner claims trial counsel's failure to call Vagias was unreasonable and prejudicial, because Dr. Vagias would have refuted an essential element of the crime of aggravated battery (great bodily harm).  (Doc. 1, p. 8). Petitioner asserts he exhausted this claim by raising it in his Rule 3.850 proceeding. (*Id.*, p. 9).

Respondent asserts petitioner is not entitled to federal habeas relief, because the state court's rejection of this claim is consistent with *Strickland, supra*.  (Doc. 19, pp. 41-45).

A.     Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard, outlined above.

B.     Federal Review of State Court Decision

Petitioner raised this claim as Ground Two of his second amended Rule 3.850 motion.  (Ex. V, pp. 55-57).  The postconviction court identified *Strickland* as the controlling legal standard (Ex. Y, pp. 361-62), and denied relief on the merits as follows:

> Second, Defendant argues that h[i]s attorney ineffectively failed to call the victim's treating physician as a witness.  Defendant alleges the testimony of Dr. Louis Vagias would have impeached the State's own witness, Dr. Patrick Conrad, on the issue of bodily harm.  The Defendant alleges that Dr. Vagias would have testified that the victim did not suffer great bodily harm, had little pain, and moderate injuries. Moreover, Defendant argues that Dr. Vagias' testimony would have given the jury a basis to conclude that the victim suffered "moderate" injury rather than "severe injury."

The State responds that even had Dr. Vagias been able to testify, his testimony would have merely been used to impeach Dr. Conrad's testimony, the victim's testimony, and the photographic evidence presented at trial.  The State concludes that in light of the extensive evidence regarding the injury suffered by the victim, even if Dr. Vagias should have testified, his attorney's failure to call him as a witness was not prejudicial.  The Court agrees with the State.

The jury was presented not only with the testimony of the victim's treating physician, but also with the testimony of the victim himself and photographic evidence of the injuries.  The jury did not require any special expert testimony to better understand the injuries to the Defendant [sic].  The jury had the benefit of the victim's own description of the attack, pain, and subsequent damages, and was able to view the injury to the victim live in person at trial.  Because no prejudice can be shown, this ground is summarily **DENIED**.

(Ex. Y, pp. 363-64) (footnote omitted).  In a footnote, the court cited to, and attached to its order, pages 320-342 of the trial transcript (an excerpt from the testimony of Edward Canon concerning his pain and injuries).  (Ex. Y, Attach. Ex A).  The state circuit court's order was summarily affirmed on appeal.

The state court's conclusion – that petitioner failed to establish the requisite prejudice under *Strickland* – was reasonable.  Petitioner was charged with the crime of Aggravated Battery of Mr. Canon by intentionally causing great bodily harm, permanent disability, or permanent disfigurement.  (Ex. A; *see also* Fla. Stat. § 784.045(1)(a)1.).  The state court concluded that petitioner failed to establish a reasonable probability of a different verdict had Dr. Vagias testified, because there was ample evidence of Mr. Canon experiencing great pain and great bodily harm through Mr. Canon's testimony (Ex. H, pp. 320-42), the photographs of Mr. Canon's injuries, and Dr. Conrad's (the physician who removed Mr. Canon's sutures)

testimony that the laceration to Mr. Canon's face involved two layers of closure due to the depth of the laceration, with approximately fifteen sutures.  (Ex. H, pp. 176, 178, 182).  Further, even if Vagias had testified, his testimony would, at most, have had the limited benefit of impeaching the evidence of great pain and great bodily harm.  The proposed testimony would not have affected the evidence of permanent disfigurement, which was supported by the jury's observations of Mr. Canon's scar, Mr. Canon's testimony concerning the permanent scarring to his face, and Dr. Conrad's medical opinion that plaintiff's injury "would leave a pretty bad scar" which would be permanent.  (Ex. H, pp. 178, 182).

The state court's rejection of petitioner's ineffective assistance claim did not result in a decision that was "contrary to, or involved an unreasonable application of" *Strickland*.  Ground Five does not entitle petitioner to federal habeas corpus relief.

Ground Six          "The judgment contains a typographical error."  (Doc. 1, p. 9).

Petitioner asserts that the written judgment incorrectly reflects that he entered a plea, and that it should be amended to reflect that he went to trial.  (Doc. 1, p. 9).  Petitioner states that "[t]o the extent that defense counsel should have realized this error at the time that the judgement was entered, defense counsel was ineffective for failing to bring the error to the attention of the Court."  (*Id*.).  Petitioner asserts he exhausted this claim by raising it in his Rule 3.850 proceeding.  (*Id*.).

Respondent asserts that petitioner already received the relief he requests in state court – the entry of a second amended judgment correcting the error – and is entitled to no further relief.  (Doc. 19, pp. 45-46).  Petitioner's reply does not acknowledge the entry of a corrected judgment, but continues to "request the Court to render an amended judgment that reflects that he went to trial rather than entering

a plea." (Doc. 27, p. 9).

Petitioner raised this claim as Ground Three of his counseled second amended Rule 3.850 motion. (Ex. V, p. 57). The State responded that although "defendant's motion is misleadingly classified as an ineffective assistance of counsel allegation," the State had no objection to correcting the scrivener's error in the judgment. (Ex. W, p. 74). Petitioner replied that he appreciated the State's candor, and that the appropriate relief was for the court to render an amended judgment reflecting the correction. (Ex. X, p. 336). The state circuit court granted that relief, stating: "Defendant argues that a typographical error in the Judgment must be corrected. The Defendant is correct and this order directs the Clerk of Court to prepare an amended Judgment reflecting that the Defendant went to trial and was found guilty rather than entering a plea. This ground is **GRANTED**." (Ex. Y, pp. 364-65). A second amended judgment was entered accordingly.

As petitioner has already received the relief he seeks, and as Ground Six does not implicate the constitutionality of his conviction or sentence, Ground Six provides no basis for federal habeas relief.

Ground Seven       "Defense counsel was ineffective for failing to object to the prosecutor's perjured [sic] during the trial." (Doc. 1, p. 9).

Petitioner claims defense counsel was ineffective for failing to object to the prosecutor's use of perjured testimony during trial. To support this claim, petitioner alleges that prior to trial Andrew Chandler testified under oath at his July 27, 2007 deposition, and during the November 27, 2007 hearing, that prior to the time petitioner used the machete, Canon (one of the victims) had a large flashlight in his hand, had lifted up his hand with the flashlight in it, and was about to strike petitioner's brother. Petitioner complains that at trial, the prosecutor led Chandler to

testify that Canon never attempted to strike anyone with a flashlight.  Petitioner faults trial counsel for "failing to object to the prosecutor's use of Mr. Chandler's perjured testimony during the trial."  (Doc. 1, pp. 9-10).  Petitioner asserts he exhausted this claim by raising it in his Rule 3.850 proceeding.  (*Id.*, p. 10).

Respondent asserts petitioner is not entitled to federal habeas relief, because the state court's rejection of this claim is consistent with *Strickland, supra*.  (Doc. 19, pp. 46-49).

A.      Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard, outlined above.

B.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Four of his second amended Rule 3.850 motion.  (Ex. V, pp. 57-59).  The postconviction court identified *Strickland* as the controlling legal standard (Ex. Y, pp. 361-62), and denied relief on the merits as follows:

> Fourth, Defendant argues that his trial counsel performed ineffectively by failing to object when the prosecutor elicited perjured testimony from witness Andrew Chandler.  This argument relies on the same general facts as presented in ground 1, above.  Defendant claims that during depositions, Andrew Chandler gave testimony favorable to a defense of defense of others.  Specifically, Mr Chandler testified at depositions that the Defendant did not attack the victim with a machete until after the victim had attacked or threatened to attack defendant's brother with a large metal flashlight.

> To whatever extent Mr. Chandler's trial testimony differed from his deposition testimony, the Defendant's attorney was able to elicit on cross examination the testimony that was given at deposition regarding defense of others.  Importantly, Defendant's testimony on direct

examination, although not entirely in line with his deposition testimony, was not definitively contrary to the defense of other's claim. Rather, the witness was less certain of some of the aspects to which he had previously testified. This lack of certainty was addressed and rehabilitated during cross examination. This ground is refuted by the record and summarily **DENIED**.

(Ex. Y, p. 365) (footnote omitted). The state circuit court's order was summarily affirmed on appeal.

The state court determined, reasonably, that Mr. Chandler's testimony was not perjury. (*Compare* Ex. E, pp. 165-167 (Chandler's testimony at November 27, 2007 hearing), *and* Ex. H, pp. 186-208 (direct examination at trial), *and* pp. 232-243 (cross-examination with prior testimony), *and* pp. 247-250 (re-direct examination)). Thus, an objection on grounds of prosecutorial misconduct in using perjured testimony would not have succeeded. *Freeman v. Attorney Gen., Fla*., 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *see also Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (concluding that counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907 (11th Cir. 2001) (concluding that counsel was not ineffective for failing to raise a non-meritorious objection); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

The state court also determined, reasonably, that counsel did attempt to exclude those portions of Chandler's testimony that were at variance, or inconsistent with, Chandler's prior sworn statements. The record establishes that when defense counsel learned, on the morning of trial, that the State Attorney met with Mr. Chandler the day prior and that some aspects of Mr. Chandler's trial testimony might be at variance

with his prior testimony, defense counsel raised the issue with the trial judge:

> [DEFENSE COUNSEL] MILLER:  Prior to court this morning he [Andrew Chandler] advised me that the state brought him in yesterday and watched videos and made suggestions to him about what he was seeing.  Now, that's important to me for two reasons.  Number one is the state in their opening statement made the statement there was no animosity during these conversations when they were in the store.  The court's aware for a sentencing hearing that's not what he testified to.  He said the other guys were jawing and saying stuff.  This concerns me for two reasons.
>
> . . . .
>
> [DEFENSE COUNSEL] MILLER:  This concerns me for two reasons.  Number one is if Mr. Chandler is brought in by the state and made suggestions about what he saw and what he heard, that's bothersome.  Number two, it's a discovery violation because now he's changed his statement from what he said prior and I  have no notice of that.  My opening statement is geared to certain things people have said . . . .

(*Id*., pp. 153-54).  The trial judge responded that "[y]ou're going to get to cross examine his witnesses with leading questions and if they've changed their story, they're going to look bad." (*Id*., p. 154).  Nonetheless, defense counsel asked, and the trial court allowed, defense counsel to bring Mr. Chandler before the court (outside the presence of the jury) and question him about his meeting with the State Attorney and his anticipated testimony. (*Id*, pp. 155-165).  After the inquiry, defense counsel moved for a mistrial:

> [DEFENSE COUNSEL] MILLER:  Well, when an attorney – either a state attorney or a defense counsel sits with a witness going through the video saying this is what I see and this is what I see goes beyond witness preparation for a trial.  It's – I don't want to say it in any stronger language but it goes beyond witness preparation to sit and watch a video with a material witness whose basically the defense witness and suggesting here's what I see, making suggestions here's what I see.  At

this point I'm not sure what he's going to testify to but it's going to be the same thing as I [referred] to before so I'm going to make a motion for a mistrial.

THE COURT: Well, I'm going to deny that and tell you to use the art of cross examination to deal with these issues and to close the state's case and if there's still an issue, we'll address it then.

(*Id.*, p. 166).   The trial court denied the motion for mistrial.   During the prosecutor's direct examination of Mr. Chandler, defense counsel objected as follows:

[DEFENSE COUNSEL] MILLER:   And I have one more motion to make, Judge, and I don't – maybe we should do it outside the presence of the jury but, again, this is the second time that testimony's been elicited that is opposite of what this man has testified to before this court at a sentencing hearing [the November 27, 2007 hearing] and at deposition because the state asked him if –

THE COURT:   Well, you can bring all that out on cross.

[DEFENSE COUNSEL] MILLER:   My point is if the state knew this – if they talked about this yesterday, the state has a continuing discovery obligation to tell me he has changed his story.   I have not been told this until right now in the middle of the trial.

THE COURT:   What is changed?

[DEFENSE COUNSEL] MILLER:   Because he's testified at the sentencing hearing, and we can get a transcript and show you, but the court was present that – and the court remembers I'm sure that the big man with the flashlight attempted to strike George [petitioner's brother] in the head.

THE COURT:   You have a transcript of that?

[DEFENSE COUNSEL] MILLER:   That was in the sentencing hearing and I also have it in the deposition.

THE COURT:  Well. you can cross examine with that.

[DEFENSE COUNSEL] MILLER:  My point is if the state was aware of that they have a continuing discovery obligation to tell me that he was going to change his story.

THE COURT:  No.  Objection for the record is noted.  Let's move on. (Ex. H, pp. 210-211).

During defense counsel's cross-examination of Mr. Chandler, counsel elicited testimony concerning Chandler's meeting with the prosecutor (Ex. H, p. 221), and essentially rehabilitated Mr. Chandler to say that Victim Cason instigated the altercation and that petitioner "took his action" with the machete only after Victim Canon "took [his] action with the flashlight."  (Ex. H, pp. 225, 226-27, 232-36, 236-243).  During the presentation of witnesses in the defense's case, defense counsel renewed his previous motion for mistrial based on Chandler's testimony.  (Ex. H, pp. 402-03).  The motion was denied.

The foregoing demonstrates that defense counsel made reasonable, if not heroic, efforts to exclude the testimony  petitioner characterizes as perjured.  When that failed, counsel aggressively cross-examined Chandler to the point of essentially rehabilitating him.  *See Hubbard v. Haley*, 317, F.3d 1245, 1259 (11th Cir. 2003) ("The Supreme Court  has recognized that defense counsel in defending their client's interests, need not urge every conceivable objection the law would provide." (*citing Engle v. Isaac*, 456 U.S. 107, 133-34, 102 S. Ct. 1558, 1575, 71 L. Ed. 2d 783 (1982))).  This court cannot say that no "fairminded jurist could agree" with the state court's conclusion that there was no violation of petitioner's Sixth Amendment right to the effective assistance of counsel.  Petitioner failed to establish deficient

performance, and further failed to establish a reasonable probability of a different outcome had counsel made petitioner's proposed objection instead of, or in addition to, the objections and motions defense counsel made.

The state court's rejection of petitioner's ineffective assistance claim did not result in a decision that was "contrary to, or involved an unreasonable application of" *Strickland*.  Ground Seven does not entitle petitioner to federal habeas corpus relief.

Ground Eight        "Defense counsel was ineffective for failing to object to the jury instruction that failed to define the various levels of injury." (Doc. 1, p. 10).

Petitioner faults trial counsel for failing to object to the jury instructions. Petitioner alleges in support of this claim that the court instructed the jury that if it found the defendant guilty it should determine the level of injury suffered by the alleged victims (severe, moderate, or slight).  However, the court did not provide any specific directions or instructions to aid the jury in making this determination. Petitioner asserts that had such an instruction been given, the jury would have concluded that Canon's injuries were, at most, moderate and not severe.  (Doc. 1, p. 10).  Petitioner asserts he exhausted this claim by raising it in his Rule 3.850 proceeding.  (*Id*.).

Respondent asserts petitioner is not entitled to federal habeas relief, because the state court's rejection of this claim is consistent with *Strickland, supra*.  (Doc. 19, pp. 49-51).

A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard, outlined above.

B.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Five of his second amended Rule 3.850 motion.  (Ex. V, pp. 59-60).  The postconviction court identified *Strickland* as the controlling legal standard (Ex. Y, pp. 361-62), and denied relief on the merits as follows:

> Fifth, Defendant argues that his attorney failed to ensure that the jury was instructed on the definitions of the various levels of injury. The standard jury instructions do not contain definitions of the various levels of injury and there is no requirement to include them.  This ground is legally insufficient and summarily **DENIED**.

(Ex. Y, pp. 365-66) (footnote omitted).  In a footnote, the court cited to *Johnson v. State*, 774 So. 2d 952 (Fla. 5th DCA 2001), which holds that in cases of aggravated battery, the standard jury instruction does not require the trial court to define great bodily harm.  (Ex. Y, p. 366 n.12).  The state circuit court's order was summarily affirmed on appeal.

"[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); *see also Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L. Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must abide by their rulings on matters of state law) (citations and footnote omitted); *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983).  Although an ineffective assistance of counsel claim is a federal constitutional claim which the court considers in light of the clearly established law of *Strickland*, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law."  *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining, in the context of an ineffective

assistance of appellate counsel claim, that "[o]n the one hand, the issue of ineffective assistance – even when based on the failure of counsel to raise a state law claim – is one of constitutional dimension," but, "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law.") (citations omitted);[7] *see also Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that defense counsel cannot be deemed ineffective for failing to make a state-law-based objection when the state court has already concluded that the objection would have been overruled under state law; to conclude otherwise would require the federal habeas court to make a determination that the state court misinterpreted state law, which would violate the fundamental principle that federal habeas courts should not second-guess state courts on matters of state law); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) (denying federal habeas relief on ineffective assistance claim based on counsel's failure to make state-law-based objection; holding that the Florida Supreme Court's conclusion that the proposed objection would have been overruled was binding and precluded federal habeas relief on the ineffective assistance claim: "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (alterations in original) (*quoting Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir.1997)).

_____

[7]*Alvord* was superseded by statute on other grounds as noted in *Hargrove v. Solomon*, 227 F. App'x 806 (11th Cir. 2007).

Here, as in *Alvord*, *Callahan*, and *Herring*, the state court has already answered the question of what would have happened had petitioner's counsel objected to the jury instructions on petitioner's proposed basis – the objection would have been overruled.  This court must defer to the state court's determination of state law. Counsel's failure to make a losing objection cannot be deemed deficient performance, and petitioner cannot show he was prejudiced by counsel's failure to make a losing objection.

The state court's rejection of petitioner's ineffective assistance claim did not result in a decision that was "contrary to, or involved an unreasonable application of" *Strickland*.  Ground Eight does not entitle petitioner to federal habeas corpus relief.

<u>Ground Nine</u>        "<u>Defense counsel had a conflict of interest in representing the Defendant at trial.</u>"  (Doc. 1, p. 11).

Petitioner asserts he was denied the effective assistance of counsel because counsel had a conflict of interest.  To support this claim, petitioner alleges that he was initially represented by Assistant Public Defender Marty Haug with whom he entered a no contest plea.  Subsequently, petitioner filed a motion to withdraw his plea alleging in part that the plea was entered as a result of ineffective assistance of counsel.  At the time of petitioner's motion to withdraw plea, petitioner was represented by a different public defender – Bruce Miller.  The court granted the motion to withdraw plea; however, the court failed to appoint new counsel to represent petitioner.  Petitioner asserts that Florida law is clear that once a defendant files a motion to withdraw plea based on ineffective assistance of counsel, the trial court is required to appoint conflict-free counsel.  Petitioner asserts that here, the substitution of Attorney Miller for Attorney Haug did not cure the problem because they were from the same law firm (the Office of the Public Defender).  Petitioner

asserts he exhausted this claim by raising it in his Rule 3.850 proceeding.  (Doc. 1, p. 11).

Respondent asserts petitioner is not entitled to federal habeas relief, because the state court's rejection of this claim is consistent with *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  (Doc. 19, pp. 52-54). Petitioner replies that he "continues to submit that Florida law requires conflict-free counsel to be appointed when a petitioner moves to withdraw a plea based on an 'adversarial relationship' with counsel." (Doc. 27, p. 11 (*citing Kepford v. State*, 64 So. 3d 189, 192 (Fla. 2d DCA 2011))).

Petitioner raised this claim as Ground Six of his second amended Rule 3.850 motion.  (Ex. V, pp. 60-62).  The postconviction court denied relief as follows:

> Fifth [sic], Defendant argues that his attorney had a conflict of interest in representing him at trial and that Defendant attempted to hire private counsel prior to trial.  In this ground, Defendant has not made any allegations of the way in which his "adversarial relationship" with his attorney negatively affected the outcome of his trial or how this alleged adversarial relationship caused his attorney to perform ineffectively.  Rather than a collateral attack on his conviction or sentence, this ground seems to attack the Court's decision to not permit an additional defense continuance shortly before trial for the purposes of allowing private counsel to prepare for trial.  Such argument is not cognizable in a motion for postconviction relief and is summarily **DENIED**.

(Ex. Y, p. 366).  The state circuit court's order was summarily affirmed on appeal.

When a defendant asserts a claim that he was denied effective assistance of counsel because his attorney had a conflict of interest and was not removed as his attorney, the court is not always required to conduct the two-step analysis under *Strickland* for ineffective assistance of counsel.  Instead, as discussed in Ground Two

above, prejudice can be presumed, but "only if a defendant demonstrates that his attorney 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'"  *Strickland*, 466 U.S. at 692, 104 S. Ct. at 2067 (citation omitted).   Here, petitioner has not shown that the successful withdrawal of his plea – a plea entered upon the advice of a previous assistant public defender – so infected Assistant Public Defender Miller's representation as to constitute an active representation of competing interests.  Absent this showing, petitioner must demonstrate prejudice under *Strickland*.   Petitioner made no showing of prejudice in state court or here.   To the contrary, the trial transcript establishes that Mr. Miller provided exceptional representation.  The state court's rejection of petitioner's claim did not result in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law." Ground Eight does not entitle petitioner to federal habeas corpus relief.[8]

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

---

[8]To the extent petitioner's claim is grounded in the trial court's failure to follow state law rules of procedure, namely *Kepford v. State, supra*, his claim provides no basis for federal habeas relief.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Germaine L. Gillett*, Okaloosa County, Florida, Circuit Court Case Number 07-CF-910, be DENIED, and the clerk be directed to close the file.

2.   That a certificate of appealability be DENIED.

At Pensacola, Florida this 24th day of June, 2014.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).